# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TROY A. CLAUSE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-127** |
| **MEDICAL STAFF, ET AL.** | **SECTION: "M"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Troy A. Clause, a state prisoner incarcerated at the Terrebonne Parish Criminal Justice Complex ("TPCJC"), filed this *pro se* federal civil action pursuant to 42 U.S.C. § 1983. He sued the TPCJC "Medical Staff," Head Nurse Pettie O'Neal, and Nurses David, Tina, April, Amber, Pat, Monique, and Dominique. In plaintiff's complaint, he stated his claim as follows:

> On the 2nd or 3 week of Feb I woke up in TPCJC Dr 600 up stairs. I was going to the bathroom with I wearing slippers as I was fixing to take the first step down the stairs I fell. Now in March I move next door. A few month later I felt a pain from my shoulder down to my elbow. I had X ray taken nothing was seen so the Doctor sent me to take a Mri and I did they found a tear on my rotater cup now a month after that now my right one is starting to hurt the same way and they talking surgery.[1]

On March 3, 2020, the Court held a <u>Spears</u> hearing in this matter. <u>See</u> <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985). "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a <u>Spears</u> hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for

---

[1] Rec. Doc. 4-1, p. 4.

more definite statement.  Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).  Spears hearing testimony becomes a part of the total filing by the *pro se* applicant.  Id.

At the Spears hearing, plaintiff testified that, after the jail x-ray revealed no injury to his left shoulder, he was sent to Chabert Medical Center ("CMC") in Houma for an MRI and then to University Medical Center ("UMC") in New Orleans for additional x-rays and treatment.  Because the MRI revealed a torn rotator cuff, a UMC staff member gave plaintiff a steroid shot, and he was then sent back to TPCJC with a prescription for more such shots and physical therapy.  He was told to return to UMC in approximately two months.  Plaintiff claims that at TPCJC, he was provided with neither steroid shots nor physical therapy; rather, at the jail, he was provided with only Naproxen (a nonsteroidal anti-inflammatory drug used to treat pain) and Tylenol (an analgesic used to treat minor aches and pains).  He stated that his right shoulder was now beginning to hurt in the same manner as his left.  He anticipated that he would soon be returning to UMC for a follow-up appointment and that surgery might be required.

The Court also obtained certified copies of plaintiff's TPCJC medical records.  Those records have been filed into this federal record,[2] and copies were provided to plaintiff for his use in this proceeding.  Those records show that, on April 30, 2019, plaintiff complained to a member of the TPCJC medical staff that he had injured his shoulder in a fall and requested an x-ray.[3]  An x-ray was then taken on May 1, 2019, but it revealed no injury.[4]  Nevertheless, he continued to experience pain over the next several months, and he was given Ibuprofen and Naproxen to help

---

[2] Rec. Doc. 9.  The following citations to those records are to the Bates-stamped page numbers appearing on the records.
[3] HM000064.
[4] HM000063.

relieve that pain.[5]  When the problem persisted, he was taken to CMC for an MRI of his left shoulder on November 22, 2019.  That MRI revealed "a small intraosseous cyst in the anterior aspect of the humeral head laterally" and an "abnormal signal intensity along the undersurface of the distal aspect of the supraspinatus tendon compatible with a partial-thickness tear communicating with the joint surface."[6]  On December 3, 2019, TPCJC staff then contacted the UMC Orthopedic Surgery Clinic for an appointment for plaintiff, and an appointment was scheduled for January 22, 2020.[7]  At that UMC appointment, two additional x-rays of his left shoulder were taken and lidocaine (a local anesthetic) and triamcinolone acetonide (a synthetic corticosteroid) were administered.  He was diagnosed with chronic left shoulder pain, advised to participate in physical therapy to strengthen his left shoulder and increase his rage of motion, told to take Tylenol for pain, and instructed to return for a follow-up visit in approximately three months.[8]  The UMC discharge papers included no order prescribing additional steroid shots to be administered at TPCJC.  Lastly, as to plaintiff's contention that he is now experiencing similar symptoms in his *right* shoulder, the medical records contain no sick-call requests or other evidence that plaintiff voiced that concern to medical staff.

## I.   Standards of Review

Plaintiff filed this federal civil action *in forma pauperis*.  Concerning such actions, federal law provides:

---

[5] HM000059 (June 2019); HM000046 (October 2019); HM000028 (November 2019); HM000019 (December 2019); HM000007 (January 2020).  The medication administration records for May of 2019 were not provided; however, other notations in the medical records indicate that he was prescribed Ibuprofen for pain during that month. HM000061-HM000062.  In October of 2019, he was switched to Naproxen after he complained that Ibuprofen made his stomach hurt.  HM000045.

[6] HM000017-HM000018.

[7] HM000016.

[8] HM000008-HM000014.

Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …

(i)     is frivolous or malicious;
(ii)    fails to state a claim on which relief may be granted; or
(iii)   seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In addition, because plaintiff is incarcerated, he is also subject to the screening provisions of 28 U.S.C. § 1915A.  That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  Regarding such lawsuits, federal law similarly requires:

On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

(1)     is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
(2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A complaint is frivolous "if it lacks an arguable basis in law or fact."  Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  In determining whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>In re</u> <u>Katrina Canal Breaches Litigation</u>, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has held:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

## II. Plaintiff's Claims

In the instant case, plaintiff claims that nurses[9] at TPCJC violated his constitutional right to medical care. With respect to such claims, federal law provides that an inmate's constitutional right to medical care is strictly limited. Specifically, that right is violated only if the inmate's "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).

---

[9] Plaintiff named nine defendants in this lawsuit. The first defendant, the TPCJC "Medical Staff," is improperly named because it is not a distinct, juridical entity capable of being sued. <u>See</u> <u>Walcott v. Crabtree</u>, Civ. Action No. 13-71, 2013 WL 5236643, at *1 n.1 (E.D. La. Sept. 13, 2013); <u>Granger v. Tangipahoa Parish Jail-Medical Staff</u>, Civ. Action No. 12-2276, 2013 WL 1103279, at *2 (E.D. La. Feb. 5, 2013), <u>adopted</u>, 2013 WL 1103293 (E.D. La. Mar. 15, 2013), <u>aff'd</u>, 554 F. App'x 271 (5th Cir. 2014); <u>Verrette v. Stalder</u>, Civ. Action No. 07-9202, 2009 WL 411196, at *3 (E.D. La. Feb. 13, 2009); <u>Mondello v. Bossier Parish Sheriff's Office</u>, Civ. Action No. 04-2609, 2006 WL 1985407, at *4 (W.D. La. June 16, 2006) (Hornsby, M.J.) (adopted by Hicks, J., on July 13, 2006). The remaining eight individuals named as defendants are identified as nurses in the complaint. Rec. Doc. 4, p. 1; Rec. Doc. 4-1, p. 5.

The United States Fifth Circuit Court of Appeals has held that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). In the instant case, plaintiff had a torn rotator cuff. Although such a condition "does not automatically present a serious medical need for purposes of constitutional analysis," "[s]everal district courts have held that a torn rotator cuff at least arguably presents a serious medical need." Robichaux v. Lafourche Parish Detention Center, Civ. Action No. 17-5680, 2017 WL 5495791, at *12 (E.D. La. Oct. 10, 2017), adopted, 2017 WL 5483780 (E.D. La. Nov. 15, 2017). For the purposes of this decision, the Court will therefore assume that plaintiff's torn rotator cuff qualified as a "serious medical need."

However, as noted, plaintiff must also be able to show that the nurses acted with "deliberate indifference." "[D]eliberate indifference is an extremely high standard." Petzold v. Rostollan, 946 F.3d 242, 248-49 (5th Cir. 2019) (quotation marks omitted). To meet that standard, an inmate must first be able to prove "*objective* exposure to a *substantial risk* of *serious harm*." Id. at 249 (emphasis added; quotation marks omitted). Second, he must also be able to prove that the jail officials he sued had "*subjective* knowledge" of that substantial risk. Id. (emphasis added). And third, he must be able to prove that those "officials, despite their actual knowledge of the substantial risk, denied or delayed the prisoner's medical treatment." Id. Anything less will not suffice; for example, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference ...." Alton v. Texas A&M University, 168 F.3d 196, 201 (5th Cir. 1999).

Here, plaintiff acknowledged that he was provided with pain medication and an x-ray at TPCJC and was also sent to outside providers for specialized tests and treatment, namely to CMC for an MRI and to UMC for additional x-rays, evaluation, and treatment.  Such evidence generally suffices to rebut an allegation of "deliberate indifference."  See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

Moreover, turning to plaintiff's specific complaints in this lawsuit, he first contends that his rights were violated because the nurses failed to administer additional steroid shots at TPCJC. That contention has no merit.  Even if the Court assumes that plaintiff was, as he alleged, orally told by the UMC staff member that additional shots should be given at the jail, *the UMC discharge paperwork contained no such prescription or recommendation*.  The jail nursing staff obviously cannot be considered to have acted with deliberate difference for failing to provide medications that were not actually prescribed or recommended.  See, e.g., Bevins v. Becker County, No. 16-CV-4340, 2019 WL 397322, at *4 (D. Minn. Jan. 31, 2019) ("It would defy logic and the law to conclude that [jail officials] were deliberately indifferent to [inmate's] medical needs by refusing to administer a medication for which [the inmate] had no prescription …."); James v. UTMB Medical Center, Civ. Action No. 6:09cv489, 2010 WL 3429583, at *4 (E.D. Tex. Aug. 27, 2010) ("The nurses in the present case likewise were not deliberately indifferent in failing to provide Tylenol # 3 to the Plaintiff when there was no prescription for it."), appeal dismissed, 426 F. App'x 297 (5th Cir. 2011).

Plaintiff's second contention, i.e. that he was not provided with physical therapy, is stronger because the discharge "Instructions" did specifically state:  "Advise PT (physical therapy)

for Left shoulder strengthening and ROM [range of motion]."[10]  Nevertheless, even if the Court assumes that such "advice" is considered tantamount to a directive or prescription, and also further assumes that the named defendants were actually aware of the advice,[11] their failure to provide the physical therapy did not rise to the level of "deliberate indifference" for the following reasons.

As an initial matter, an outside physician's recommendation concerning a specific course of treatment, such as the provision of physical therapy, is not necessarily binding on jail medical staff.  See Stewart v. Murphy, 174 F.3d 530, 535 (5th Cir. 1999) (holding that jail physician's refusal to follow private surgeon's recommendation that inmate be "transferred to another facility to receive, among other things, physical therapy" did not constitute "deliberate indifference" because, "[e]ven though she did not follow [the surgeon's] recommendations, this suggests nothing more than a difference in opinion as to the appropriate method of treatment under the circumstances").  Of course, if the *jail physician* (who has not been named as a defendant herein) chose to follow the UMC advice and *ordered* that physical therapy be provided to plaintiff, the Court would have no hesitation in concluding that the nursing staff was then duty bound to follow that order; however, there is no indication in the medical records that the jail physician entered such an order in this case.  Therefore, again, the nurses were not deliberately indifferent for failing to provide a medical treatment for which there was no actual order.[12]

---

[10] HM000008 and HM000013.

[11] It must be noted that plaintiff's medical records contain no actual order or prescription for physical therapy from the jail physician – or any sick-call requests from plaintiff asking for physical therapy or complaints from him based on the fact that he was not receiving such therapy.

[12] Out of an abundance of caution, the Court also notes that the jail doctor's failure to order physical therapy also would not, in and of itself, necessarily constitute "deliberate indifference."  Rather, as already explained, in order to prove "deliberate indifference," an inmate must be able to prove "*objective* exposure to a *substantial* risk of *serious harm*."  Petzold v. Rostollan, 946 F.3d 242, 249 (5th Cir. 2019) (emphasis added); accord Hinojosa v. Livingston, 807 F.3d 657, 665 (5th Cir. 2015) ("Whether a risk is *substantial* and the threatened harm is *serious* represents an *objective* test …." (emphasis added)).  In the instant case, the Court cannot say that, viewed objectively, a failure to order

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim upon which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 30th day of April, 2020.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

physical therapy recommended merely to "strengthen" plaintiff's shoulder and improve his range of motion posed to him a *substantial risk* of *serious harm* so egregious as to trigger constitutional protections.

Would such a failure be unprofessional? Perhaps. Medically inadvisable? Again, perhaps. But "deliberately indifferent"? No. At worst, such a failure *might* rise to the level of malpractice or negligence – but, even then, that would not be enough to state a § 1983 claim. Although allegations of malpractice or negligence may suffice to support a *state-law claim* actionable in the state courts, they are insufficient to state a *federal constitutional claim* cognizable in federal court. Estelle v. Gamble, 429 U.S. 97, 107 (1976) (noting that the proper forum for a claim of "medical malpractice" is state court); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) ("[N]egligent medical care does not constitute a valid section 1983 claim."); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004) ("Simple medical malpractice or negligence does not constitute a violation of an inmate's constitutional rights. It is, instead, a violation of a tort duty of care and must be pursued in state court.").

Of course, none of this is meant to imply that the Court approves of the failure to provide plaintiff with physical therapy. Such physical therapy might well have improved his condition and quality of life. But, again, that is not the test. The test is simply whether the failure to provide physical therapy recommended merely to strengthen his shoulder and improve his range of motion posed a *substantial risk* of *serious harm* to his health. It did not. See, e.g., Keohan v. Naphcare Medical Services, Civ. Action No. 13-11446, 2015 WL 6697252, at *7 (D. Mass. Nov. 3, 2015) ("[L]ack of physical therapy does not provide a 'substantial risk of serious harm.'").